UNITED STATES of America, Plaintiff,

v.

Charles William O'BRIEN, Defendant.

No. CR2–93–152.

United States District Court,
S.D. Ohio, E.D.

Oct. 20, 1993.

Deborah A. Solore, Asst. U.S. Atty., Dale Williams, Asst. U.S. Atty., and Edmund A. Sargus, Jr., U.S. Atty., Columbus, OH, for plaintiff.

Michelle Stine Barnoff, Kerry M. O'Brien, Akron, OH, for defendant.

## MEMORANDUM AND ORDER FINDINGS OF FACT

BECKWITH, District Judge.

This Court held an evidentiary hearing in this matter on October 8, 1993. Following the hearing, the parties submitted proposed findings of fact and conclusions of law. The following factual matters have been found to be substantially likely to be true for purposes of the issuance of a preliminary injunction based on the Indictment, the affidavit of Jon deVries, the affidavit of Glenn Clevenger and the testimony of Karen O'Brien, Herbert Shoemaker, Debra Hartman, Francis Laihr, Jenny Lanning, Carol Ius, Roger Daugherty and Mark Stroh.

1. The United States has established, as detailed in the Indictment in this case, that Charles William O'Brien, defendant, (hereinafter "O'Brien") has probably engaged in an ongoing scheme of bank fraud against several banks and savings and loans in the Southern District of Ohio.

2. As a result of the alleged acts of bank fraud involving Merit Savings Association, O'Brien obtained the loan proceeds of eight loans from Merit Savings in May, 1988, in the total net amount of $761,994.17

3. These proceeds were transferred under the control of O'Brien through a series of transactions until on or about July 22, 1988, when $250,000 of the proceeds was used by O'Brien to purchase real estate consisting of a home and lot located at 2211 Cedar Point Road, Sandusky, Ohio, (the "Sandusky Real Estate") which was titled in the name of Jasper Investment Corporation, a nominee of O'Brien's.

4. The Sandusky Real Estate was later transferred to Sand Dusk Corporation and used by O'Brien to obtain a line of credit in the amount of $250,000 from Ameritrust Corporation, N.A.

5. On and after June 22, 1990, O'Brien probably engaged in four money laundering transactions, as that term is described in 18 U.S.C. § 1957, in the total amount of $219,-569.81.

6. Due to the acts of O'Brien, the proceeds of the money laundering cannot be located despite the exercise of due diligence; or the proceeds have been transferred or deposited with a third person and are currently beyond the grasp of the United States.

7. The United States has restrained the following known personal property:

a. 1993 Cadillac Fleetwood, VIN 1G6DW5278PR712854;

b. 1988 Chevrolet Suburban, VIN 1GNGV26K9JF167192;

c. property located in a guest house and storage shed located at 1184 Drycreek Road, Granville, Ohio and more particularly described on Government Exhibit 66A;

d. property located in the house at 1184 Drycreek Road, Granville, Ohio and more particularly described on Government Exhibit 66B;

e. property located in a building described as a five car garage and consisting of miscellaneous building supplies and other items which have not yet been inventoried;

f. real estate located at 4490, 4484 and 4394 North Street, Granville, Ohio and more particularly described on the certified copies of deeds identified in this matter as Government Exhibits 60, 54 and 50 respectively;

g. rental payments from tenants of the real estate located at 4490, 4484 and 4394 North Street, Granville, Ohio and more

particularly described on the certified copies of deeds identified in this matter as Government Exhibits 60, 54 and 50 respectively.

8. None of the known property restrained is claimed to be proceeds of the money laundering.

9. At this point, the total value of the real and personal property restrained, except for the automobiles, is found not to exceed the amount of $219,569.81 based on the following facts:

a. The fair market value of the appraised property found at 1184 Drycreek Road is approximately $92,546.00.

b. The fair market value of the unappraised property found at 1184 Drycreek Road in the five car garage which consists of miscellaneous construction supplies is as yet unknown.

c. The fair market value of the real estate located on North Street, Granville, Ohio and described above is $195,000; however, this real property has an undetermined number of liens against it, including some which are being foreclosed. Government Exhibits 72B and 75G show that foreclosures are being sought by Citicorp Mortgage, Inc. against 4490 North Street and 4484 North Street and that the total claimed due by the first lien holder is $49,293.37 plus interest and costs.

d. The current monthly rentals received from the North Street properties according to checks and rental receipts identified as Government Exhibits 73, 75C and 77 is $1600.00.

Although bank accounts were included in the restraining order, none have been identified by the government. In the event that additional information is presented to the Court which more fully determines the fair market value of the substitute assets and any bank accounts, then, and in the event that the total aggregate net value exceeds $219,569.81, this finding is subject to revision.

10. The Cadillac automobile described above is titled in the name of General Motors Acceptance Corporation ("GMAC") and was leased to First Financial Holdings, a division of O.B. Corp., and Roger L. Daugherty ("Daugherty"). Daugherty falsely represented to GMAC that he was an officer of First Financial Holdings and did so with the intention of leasing the Cadillac for O'Brien's use. When O'Brien failed to pay, Daugherty made several lease payments on the Cadillac to GMAC, but does not want or need the car. GMAC did not intend to enter into a lease with O'Brien for the Cadillac.

11. The Court takes judicial notice that automobiles depreciate rapidly in value.

12. O'Brien has no known or proffered claim of beneficial or legal ownership of the Cadillac.

13. The United States does not contest GMAC's ownership of the Cadillac.

14. The Chevrolet Suburban automobile described above is titled in the name of GMAC and was leased to Clearwater Management. During the term of the lease, the Suburban was sometimes in the position of O'Brien's son. The lease has terminated. At the termination of the lease of the Suburban, the lessee failed to return it to GMAC and failed to exercise the buy-out option.

15. O'Brien has no known or proffered claim of ownership to the Suburban.

16. The United States does not contest GMAC's ownership of the Suburban.

17. The North Street properties, described above, have been beneficially owned and controlled by O'Brien for several years. On September 16, 1993, the date of the restraining order herein, O'Brien continued to have beneficial ownership and control of the North Street properties and to collect the rent from that property.

18. O'Brien is found to have actual or beneficial ownership, subject to the claims or liens of bona fide third parties, in all of the property described herein except the automobiles.

19. Both automobiles described herein were being used by O'Brien and/or were in his possession on September 16, 1993.

20. The defendant has shown a propensity to hide or transfer his assets. Absent the issuance of a restraining order pending the trial of this matter, there is a likelihood that

neither the assets restrained nor any other assets will be available for forfeiture.

21. The defendant has failed to show or proffer any evidence that any harm will occur to him if the injunction issues.

22. It is in the public's interest to preserve assets which are subject to forfeiture for money laundering.

23. The testimony of attorney R.J. Adams did not include any confidential communications between him as an attorney and O'Brien as his client, but instead involved factual matters regarding Adams' alleged status as a trustee of the North Street properties.

### CONCLUSIONS OF LAW

1. This is a case of first impression in this circuit.

2. A temporary restraining order sought by the government post-indictment pursuant to 18 U.S.C. § 982, and provisions of 21 U.S.C. § 853 incorporated therein, may be issued *ex parte.*

3. Before a post-indictment *ex parte* restraining order obtained by the government pursuant to 18 U.S.C. § 982 and 21 U.S.C. § 853 may be converted to a preliminary injunction, a defendant is entitled to an opportunity to be heard. Such a post-restraint hearing is limited in scope and is not an occasion for the court to inquire as to the validity of the indictment. *United States v. Moya–Gomez,* 860 F.2d 706 (7th Cir.1988), *cert. denied sub nom Estevez v. United States,* 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989). The legislative history is clear that at such a hearing, "the probable cause established in the indictment or information is to be determinative of any issue regarding the merits of the government's case on which the forfeiture is to be based." S.Rep. No. 225, 98th Cong., 1st Sess. 203, *reprinted in* [1984] U.S.Code & Admin.News 3182, 3386.

4. At the required hearing, the government's burden is to show a substantial likelihood of success on the merits of its criminal case and on its claim of forfeiture of the assets.

5. The remaining traditional elements for issuance of a preliminary injunction are also met in this case: a) the injunction is necessary to prevent irreparable injury; b) the threatened injury to the government outweighs the harm the injunction might do to the defendant; and c) the entry of an injunction is consistent with the public interest. *See, e.g., Mason County Medical Association v. Knebel,* 563 F.2d 256, 261 (6th Cir.1977).

6. The federal rules of evidence do not apply at preliminary injunction hearings generally, and a post-restraint preliminary injunction hearing under 21 U.S.C. § 853 is no different. *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981).

7. The proceeds of the acts of money laundering in this case have not been located, despite the due diligence of the government, or the proceeds of the acts of money laundering in this case have been transferred or deposited with third persons. Accordingly, substitute assets identified by the government are subject to forfeiture. 21 U.S.C. § 853(p).

8. Pursuant to 21 U.S.C. § 853, the government is entitled to a restraining order and preliminary injunction to preserve substitute assets when the proceeds of money laundering cannot be located upon the exercise of due diligence or when such proceeds have been transferred or deposited with third persons. *In re Billman,* 915 F.2d 916 (4th Cir.1990).

9. The need to restrain substitute assets in this case where the Defendant has shown a propensity to hide and transfer assets is particularly acute. Given the directive of 21 U.S.C. § 853(*o*) that the provisions of the section "shall be liberally construed to effectuate its remedial purposes," the court may exercise its power to take such actions as are necessary to preserve those assets for forfeiture.

10. The defendant's control and/or beneficial ownership of assets is sufficient to make them subject to restraint and forfeiture pursuant to 18 U.S.C. § 982. *See, United*

*States v. Benevento,* 663 F.Supp. 1115, 1119 (S.D.N.Y.1987), *aff'd* 836 F.2d 129 (2d Cir. 1988).

 11. The United States is not required to post bond for the issuance of preliminary injunctions. Federal Rules of Civil Procedure, Rule 65.

12. All third party claims to the property restrained are barred at this stage of the proceedings. 21 U.S.C. § 853(k) and (n).

13. Without finally determining the rights of any entities to the automobiles restrained herein, the Court finds, in order to preserve their value, that the automobiles shall be turned over to their record owner, GMAC, for a commercially reasonable sale, that the proceeds of said sale shall be held in trust by GMAC and that GMAC shall report back to the Court after the sale for further orders regarding said proceeds.

14. The defenses and proffers of defendant regarding title insurance coverage of the victim banks and alleged set-offs or the amount of losses experienced by the banks are irrelevant to the issue of criminal bank fraud allegations pursuant to 18 U.S.C. § 1344.

15. The defendant's offer to obtain title insurance as a substitute for the assets restrained is not legally sufficient to stand in place of said assets. The only legally sufficient substitute would be a satisfactory performance bond. 21 U.S.C. § 853(e)(1).

 16. The attorney-client privilege is determined under the federal common law in a criminal matter. Federal Rules of Evidence, Rule 501.

17. The attorney-client privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney. *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). "The mere fact that a person is an attorney does not render as privileged everything he does for and with a client." *United States v. Bartone,* 400 F.2d 459 (6th Cir. 1968), *cert. denied,* 393 U.S. 1027, 89 S.Ct. 631, 21 L.Ed.2d 571 (1968). The testimony

of R.J. Adams fell entirely outside the protection of attorney-client privilege.

### Conclusion

In view of the preceding, the Court hereby **GRANTS** the Plaintiff's motion to convert the temporary restraining order into a preliminary injunction, and **DENIES** the Defendant's motion for a stay of execution.

**IT IS SO ORDERED.**