**GREENPEACE FOUNDATION; Center for Biological Diversity; and Turtle Island Restoration Network, Plaintiffs,**

v.

**William M. DALEY, Secretary, United States Department of Commerce; and Penelope D. Dalton, Assistant Administrator, National Marine Fisheries Service, Defendants.**

No. Civ. 00–00068SPKFIY.

United States District Court,
D. Hawaii.

June 5, 2000.

Paul Achitoff, David L. Henkin, D. Kapua'ala Sproat, Earthjustice Legal Defense Fund, Honolulu, HI, for plaintiffs Greenpeace Foundation, Center for Biological

Diversity, and Turtle Island Restoration Network.

Steven S. Alm, R. Michael Burke, Office of the United States Attorney, Honolulu, HI, Anthony P. Hoang, United States Department of Justice, Environment and Natural Resources Division, Washington, D.C., Mark A. Brown, United States Department of Justice, Environment and Natural Resources Division, Washington, D.C., for defendants William M. Daley and Penelope Dalton.

Bryan Y.Y. Ho, Donald E. Fisher, Honolulu, HI, for defendant-intervenor Association of NWHI Lobster Permit Holders.

*ORDER DENYING PLAINTIFFS' MOTION TO STRIKE, GRANTING ASSOCIATION OF NWHI LOBSTER PERMIT HOLDERS' MOTION FOR LEAVE TO INTERVENE, AND DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION*

SAMUEL P. KING, District Judge.

Plaintiffs Greenpeace Foundation, Center for Biological Diversity, and Turtle Island Restoration Network (collectively "Plaintiffs") bring this suit against Defendants William M. Daley, Secretary of the United States Department of Commerce, and Penelope D. Dalton, Assistant Administrator of the National Marine Fisheries Service (collectively "Defendants") to protect the endangered Hawaiian monk seal. Plaintiffs allege that commercial lobster fishing in the Northwestern Hawaiian Islands ("NWHI") authorized by the National Marine Fisheries Service ("NMFS") is depleting the monk seal's food resources. Three motions are before the Court: (a) Plaintiffs' motion for a preliminary injunction enjoining lobster fishing in the NWHI; (b) Plaintiffs' motion to strike portions of the declaration of Charles Karnella filed in opposition to the motion for a preliminary injunction; (c) a motion to intervene filed by the Association of NWHI Lobster Permit Holders.

## BACKGROUND

The Hawaiian monk seal (*Monachus schauinslandi*) ("monk seal") is listed as an endangered species. *See* 50 C.F.R. § 17.11. The monk seal inhabits eight areas in the NWHI: French Frigate Shoals ("FFS"), Laysan Island, Lisianski Island, Pearl and Hermes Reef, Midway Atoll, Kure Atoll, Necker Island, and Nihoa Island. The NWHI is designated as the monk seal's "critical habitat." The largest breeding colony of monk seals is located at FFS, with about one-third of all monk seals living there. *See* A.R. Vol. XXXIII, No. 1590, at 61.[1]

As of 1999, approximately 1,300 to 1,400 monk seals remain in existence. *See id.* According to NMFS, beach counts of monk seals (a historical index of abundance) have declined by 60% since the late 1950s, and 4% to 5% annually from 1985 to 1993. *See id.* Counts stabilized from 1993 to 1998, but NMFS is concerned that the decline in population may continue in the near future because of high juvenile mortality and low reproductive recruitment at the FFS colony. *See id.* Decreased prey availability has been identified as a contributing factor in the declining population of monk seals at FFS. *See* A.R. Vol. XXVI, No. 1403, at 234.

Plaintiffs allege that the depletion of the monk seal's food supply is attributable to competition from the Crustacean Fisheries for the Western Pacific Region (the "Fishery"). The Fishery is managed by NMFS and the Western Pacific Regional Fishery Management Council ("Council"). *See* A.R. Vol. XV, No. 831, at 5. The Fishery harvests two species of lobster: spiny lobster (*Panulirus marginatus*) and slipper lobster (*Scyllrides squammosus*). Monk seals are known to prey on lobsters.

In 1983, NMFS adopted the "Fishery Management Plan for the Crustacean

---

1. "A.R." refers to the administrative record.

Fisheries of the Western Pacific Region" ("FMP") pursuant to the Magnuson–Stevens Fishery Conservation and Management Act, 16 U.S.C. § 1801 *et seq. See* A.R. Vol. XV, No. 831, at 3. NMFS prepared an environmental impact statement ("EIS") in connection with the FMP. The FMP regulates fishing for crustaceans, including spiny and slipper lobsters, in waters around the NWHI and the main Hawaiian Islands. *See id.* NMFS sets annual harvest guidelines based on a formula contained in the FMP. NMFS is currently preparing another EIS for the FMP.

Lobster fishing grew rapidly in the 1980s. Lobster landings peaked in 1984 and gradually declined from 1985 through 1989. *See id.* at 5. A decrease in landings and catch-per-unit-effort continued in 1990 and 1991, prompting NMFS to close the Fishery in 1991. *See id.* In 1992, the FMP was amended to include an annual six-month closed season and to establish an annual catch quota. *See id.* at 5–6. The Fishery reopened in 1992. In 1993, however, NMFS closed the Fishery again because the lobster population had not recovered sufficiently. *See id.* at 6. The Fishery reopened in 1994 with an initial quota of 200,000 lobsters, but after the first month of fishing, NMFS realized that the quota should have been 20,000 lobsters. *See id.* at 7. NMFS aborted the season after about 130,000 lobsters had already been harvested. *See id.* Between 1998 to 1999, the exploitable population throughout the NWHI of spiny and slipper lobsters combined declined 20 to 30 percent.

Plaintiffs filed this suit on January 26, 2000, alleging that Defendants are in violation of Sections 7 and 9 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.,* and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*[2] The suit seeks judicial review pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.,* of NMFS's implementation of the FMP. Plaintiffs now move for a preliminary injunction against all lobster fishing in the NWHI by the Fishery pending the final disposition of the suit.

Two developments have occurred since this motion was filed. First, the Association of NWHI Lobster Permit Holders ("Association") has moved for leave to intervene in the suit. The Association is an unincorporated nonprofit association comprised of owners, masters, and crew of vessels that participate in the Fishery or hold permits, suppliers, vendors, seafood brokers, and other related businesses.

Second, NMFS has published a proposed rule in the Federal Register that would close the 2000 lobster fishing season scheduled to open on July 1. *See* 65 Fed. Reg. 24,906 (April 28, 2000). The proposed rule is also likely to implement an experimental fishing program during the closed season to allow limited harvesting of lobsters for data collection purposes. *See id.* at 24,907. According to NMFS, the final rule officially closing the season will be published, if at all, by June 30, 2000. The proposed closure is "to address concerns raised by NMFS scientists for the health of the fishery and the potential for overfishing lobster resources." *Id.*

### DISCUSSION

#### I. *MOTION TO STRIKE*

Defendants offer the declaration of Charles Karnella, Administrator of the NMFS Pacific Islands Area Office, in opposition to Plaintiffs' motion for a preliminary injunction. Plaintiffs move to strike paragraphs six through forty-five of Mr. Karnella's declaration on the ground that Defendants are attempting to offer Mr. Karnella's scientific and technical opinion without first qualifying him as an expert

---

2. On April 4, 2000, Plaintiffs were given leave to amend their complaint to include a claim under Section 9.

witness pursuant to Rule 702 of the Federal Rules of Evidence.

■ The Supreme Court has recognized that "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *University of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). The Federal Rules of Evidence do not apply to preliminary injunction hearings in general. *See S.E.C. v. Cherif*, 933 F.2d 403, 412 n. 8 (7th Cir. 1991); *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 25–26 (1st Cir.1986); *United States v. O'Brien*, 836 F.Supp. 438, 441 (S.D.Ohio 1993); *Commodity Futures Trading Comm'n v. American Metal Exch. Corp.*, 693 F.Supp. 168, 173 (D.N.J. 1988). The Court may consider inadmissible evidence to determine the likelihood of irreparable harm in deciding a motion for a preliminary injunction. *See Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir.1984). It follows that the Court may consider inadmissible evidence to determine if there is an absence of irreparable harm.

■ Even assuming portions of Mr. Karnella's declaration are offered in violation of Rule 702, they need not be stricken. The Court considers the declaration in its entirety, and accords it the weight that is appropriate in light of Plaintiffs' objections. Plaintiffs' motion to strike portions of Mr. Karnella's declaration is DENIED.

## II. *MOTION TO INTERVENE*

■ The Association seeks leave to intervene to protect the interests of its members which, it alleges,[3] will be greatly af-

fected if this Court enjoins all commercial lobster fishing around the NWHI.

Rule 24(a)(2) of the Federal Rules of Civil Procedure provide that intervention of right is permitted

> [u]pon timely application ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a)(2).

The Association filed this motion for intervention less than three months after the initiation of this lawsuit. Allowing the Association to intervene at this point in the litigation would not prejudice Plaintiffs or Defendants. The motion is timely.

The Association no doubt has a "significantly protectable interest" in the outcome of this litigation. Where "the injunctive relief sought by plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests, that party satisfies the 'interest' test of Fed.R.Civ.P. 24(a)(2).…" *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir.1995). The Association's interests are clearly protectable under the ESA and NEPA. If NMFS is found to have breached its obligations under these two statutes, the relief that follows is the suspension of lobster fishing in the NWHI, an outcome that will have serious economic consequences for the Association's members.[4]

---

**3.** The Association's motion is largely based on statements in a declaration made by counsel for the Association. Plaintiffs object to the declaration as inadmissible hearsay and move to have it stricken. The Court denies Plaintiffs' objection for the same reasons it denies Plaintiffs' motion to strike portions of Mr. Karnella's declaration. A motion to intervene does not require the Court to determine a material or ultimate fact in the litigation.

Thus, the Federal Rules of Evidence do not govern submissions related to the motion.

**4.** Plaintiffs dispute the amount of profit loss that Association members will suffer if the Fishery is closed. The Association need only prove that it has a protectable interest in the litigation—it need not prove the extent of that interest.

Moreover, the Association will be practically impaired from protecting its interests absent being made a party to this suit. If the Court were to grant injunctive relief to Plaintiffs, the Association would have no legal means to challenge the injunction while it remains in effect. *See id.* at 1498.

Finally, the Association has satisfactorily shown that its interest is inadequately represented by the existing parties. The requirement of inadequate representation only demands a showing that representation *may* be inadequate. *See id.* Although the interest of NMFS and that of the Association overlap, they are not identical. As a federal agency, NMFS has a public interest in managing marine resources within the constraints of environmental laws and regulations. In contrast, the Association's private interest is not controlled by the procedural requirements of the ESA and NEPA to the extent that NMFS's actions are.

Since the Association has demonstrated that it is entitled to intervention as of right, its motion for leave to intervene is GRANTED.

## III. *MOTION FOR PRELIMINARY INJUNCTION*

The primary motion before the Court is Plaintiffs' motion for a preliminary injunction against commercial lobster fishing in the NWHI pending resolution of this suit. Plaintiffs argue that an injunction is needed to prevent further depletion of the monk seal's food supply caused by NMFS's alleged failure to comply with ESA and NEPA requirements in managing the Fishery. While the Defendants oppose the motion in substance, but they also raise procedural arguments based on actions NMFS has taken after the filing of the motion. For example, Defendants maintain that the proposed closure of the 2000 lobster fishing season renders the motion moot and the Section 9 claim non-justiciable. Defendants' procedural arguments are unpersuasive. The Court further finds that Plaintiffs are likely to prevail on the merits of their claims. However, as discussed below, countervailing considerations warrant denial of injunctive relief at this time.

## A. PROCEDURAL ARGUMENTS

Defendants oppose the motion for a preliminary injunction on several procedural grounds. First, Defendants contend that Plaintiffs' request for judicial review under the APA is improper because Plaintiffs have not identified any specific "agency action" that is subject to review. Second, they claim that Plaintiffs' Section 7 and NEPA claims are moot in light of NMFS's decision to reinitiate consultation, prepare another EIS, and close the 2000 lobster fishing season. Third, Defendants argue that the proposed closure of the Fishery renders Plaintiffs' Section 9 claim non-justiciable, as no "case or controversy" regarding the claim remains before the Court. Each argument is addressed in turn.

### 1. *Agency Action*

■ Judicial review of "agency action" is available under Section 702 of the APA. 5 U.S.C. § 702. Defendants maintain that Plaintiffs' claims are "generalized attacks on the NMFS' administration of the crustacean fishery," not identifiable "agency action" subject to APA review. Defendants compare the relief Plaintiffs seek in this case to the "sweeping judicial intervention into agency administration" that the Supreme Court ruled improper under the APA in *Lujan v. National Wildlife Federation,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

This case is distinguishable from *National Wildlife Federation.* There, the plaintiffs challenged a "land withdrawal review program" administered by the Bureau of Land Management ("BLM"). The plaintiff did not refer to a single BLM order or regulation or a defined universe of BLM actions. The Supreme Court held that the plaintiff could not challenge the

entirety of the land withdrawal review program because it did not represent "agency action." *See id.* at 890, 110 S.Ct. 3177.

Here, Plaintiffs challenge the FMP and its implementation. Unlike the "land withdrawal program" at issue in *National Wildlife Federation,* the FMP is a well-defined plan developed and issued under the Magnuson–Stevens Fishery Conservation and Management Act. Implementation of the FMP is clearly agency action. NMFS acknowledged as much in its 1991 biological opinion[5] and again in the EIS for the original FMP.[6] *See* Pl.'s Mot.Prelim.Inj.Exh. "48" at 113; A.R. Vol. XVII, No. 1050, at 210. The FMP is sufficiently specific to permit review under the APA. Accordingly, this Court has jurisdiction over Plaintiffs' claims for APA review.

### 2. Justiciability

■ Article III of the United States Constitution limits federal judicial power to "cases or controversies." *See* U.S. Const. art. III; *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.,* 528 U.S. 167, 120 S.Ct. 693, 703, 145 L.Ed.2d 610 (2000). Defendants argue that Plaintiffs' Section 9 claim presents no case or controversy because the Fishery is currently closed and will remain closed for the 2000 season.

Again, Defendants misunderstand the nature of Plaintiffs' claims. The target of the Section 9 claim is not the lobster harvest guideline or even the operation of the Fishery per se, but the implementation of the FMP. The fundamental premise of this lawsuit is that the FMP is flawed. It is the method by which the FMP manages crustacean populations in the NWHI, including the formula and model it uses to calculate annual harvest guidelines, that this claim places at issue. The alleged mismanagement of the Fishery and the excessive harvest guidelines are merely consequences of implementing the FMP. So long as the FMP remains in effect—as it does even while the Fishery is closed—there exists a live case or controversy regarding NMFS's compliance with Section 9.

### 3. Mootness

■ Defendants argue that Plaintiffs' Section 7 and NEPA claims are moot.

The basis of the Section 7 claim is that NMFS must be enjoined from reopening the Fishery until it reinitiates formal consultation pursuant to Section 7 because NMFS's past consultation efforts have been fraught with shortcomings. Defendants respond that the claim is moot because NMFS reinitiated consultation on the FMP on February 14, 2000. NMFS has not yet decided whether the latest consultation will be done formally or informally. Defendants represent that NMFS will consider any new information concerning monk seals in this latest consultation. Consultation is expected to be complete before July 2000.

An action is moot where "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Headwaters, Inc. v. Bureau of Land Management, Medford Dist.,* 893 F.2d 1012, 1015 (9th Cir.1989) (quoting *Northwest Environmental Defense Ctr. v. Gordon,* 849 F.2d 1241, 1244 (9th Cir. 1988)) (internal quotation marks omitted). Defendants have a heavy burden to demonstrate mootness. *See id.* (citing *Los Angeles County v. Davis,* 440 U.S. 625, 99

---

5. The 1981 biological opinion stated:

> The proposed action is the implementation of a spiny lobster fishery management plan which was developed in order to create a management system for spiny lobster fisheries in the Fishery Conservation Zone (FCZ) of the Western Pacific Region between 3 and 200 nautical miles (nmi) off the Hawaiian Islands, American Samoa, and Guam.
>
> Exh. 48 at 113.

6. The EIS stated:
> The proposed action is to establish a management regime for the spiny lobster fisheries in the Western Pacific Region.
>
> A.R. Vol. XVII, No. 1050, at 210.

S.Ct. 1379, 59 L.Ed.2d 642 (1979)). There is ample reason to reject Defendants' suggestion of mootness. NMFS's latest consultation effort is not certain to obviate the relief Plaintiffs seek, which is the reinitiation of formal consultation. NMFS has not yet determined that it will conduct a formal consultation. *See* Karnella Decl. ¶ 26 (stating that NMFS "will conduct a formal consultation *if* it determines that the fishery is likely to take monk seals or is likely to adversely affect monk seals or adversely modify their critical habitat."). It is conceivable that NMFS might consider formal consultation unnecessary. Thus, a live case or controversy exists because "the challenged government activity … has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." *Headwaters*, 893 F.2d at 1015 (quoting *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974)) (internal quotation marks omitted). Furthermore, Plaintiffs' claim for injunctive relief under Section 7 is not moot pending consultation. *See Lane County Audubon Soc'y v. Jamison*, 958 F.2d 290, 294 (9th Cir.1992).

■ Defendants additionally argue that the NEPA claim is moot. In December 1999, over one month before Plaintiffs filed this suit, NMFS unilaterally decided to prepare an EIS on the federal management of crustaceans in the Western Pacific Region. *See* A.R. Vol XVII, No. 1045A (64 Fed.Reg. 70,679 (Dec. 17, 1999)). Defendants claim that this voluntary action obviates the need for injunctive relief under NEPA.

Plaintiffs' NEPA claim is not moot. In a case in this district, Judge David Ezra recently rejected the same mootness argument made by Defendants. *See Leatherback Sea Turtle v. National Marine Fisheries Serv.*, Civ. No. 99–00152DAE, at 32–33 (D.Haw. Oct. 18, 1999). In *Leatherback Sea Turtle*, the plaintiffs claimed that NMFS violated NEPA and the APA in authorizing fishing by the Hawaii Longline Fishery without first preparing an adequate EIS. Plaintiffs sought a court order compelling NMFS to prepare an EIS and a preliminary injunction against the fishery's activities until the EIS was complete. NMFS announced its decision to prepare an EIS the day before Plaintiffs filed their motion for summary judgment. NMFS then argued that the NEPA claim was moot. The court agreed that the request for an order directing NMFS to prepare an EIS was moot, but enjoined the fishery's activities pending completion of the EIS. *See id.*

The present situation is nearly identical to *Leatherback Sea Turtle*. Plaintiffs' claim that NMFS must prepare a new EIS may be moot, but their claim for injunctive relief is not. NMFS may not evade an injunction against further implementation of the FMP while the environmental impacts of implementing the FMP are being reviewed.

## B. LIKELIHOOD OF SUCCESS ON THE MERITS

### 1. *Section 7 of the ESA*

■ Under Section 7 of the ESA, every federal agency must insure that any action authorized, funded, or carried out by the agency is not likely to jeopardize the continued existence of listed species. *See* 16 U.S.C. § 1536(a)(2). The agency must consult with the Secretary of Commerce, who acts through NMFS in this case.[7] *See id.* Consultation can be informal or formal. Informal consultation is an optional process designed to assist the agency in determining whether formal consultation is required. *See* 50 C.F.R. § 402.14(a). If an agency determines during informal consultation that the proposed action is not

---

**7.** Since NMFS is also the agency that authorizes the Fishery's activities, it consults with itself.

likely to adversely affect listed species or critical habitat, and NMFS concurs, the consultation process terminates and no further action is required. *See id.* If, however, the agency determines that the proposed action may affect listed species or critical habitat, formal consultation is required. *See* 50 C.F.R. § 402.14(a).

After formal consultation is complete, the agency must prepare a biological opinion. *See* 16 U.S.C. § 1536(b)(3)(A). The biological opinion must include a "detailed discussion of the effects of the action listed species or critical habitat" and NMFS's "opinion on whether the action is likely to jeopardize the continued existence of a listed species or result in the destruction or adverse modification of critical habitat," (a "jeopardy opinion"), or whether the proposed action poses no such danger (a "no jeopardy opinion"). 50 C.F.R. § 402.14(h)(1), (3).

If new information reveals effects of the action that may affect listed species or critical habit in a manner or to an extent not previously considered, the agency must reinitiate consultation. *See* 50 C.F.R. § 402.16(b). Consultation must also be reinitiated if the action is modified in a manner that impacts a listed species or its habitat in a way that was not previously considered. *See* 50 C.F.R. § 402.16(c).

To date, NMFS has prepared two biological opinions to assess the environmental impact of the Fishery's activities in the NWHI. NMFS issued its first opinion in 1981 in connection with the FMP. The opinion noted the paucity of information available on the FMP's impact on the food supply of the monk seal. Based on the available data, the opinion explained that "monk seals are opportunistic feeders supported by a diverse prey base. Therefore, ... if lobster were to become unavailable to monk seals, monk seals probably could adapt by shifting to other prey species." Pl.'s Mot.Prelim.Inj.Exh. "48" at 128. However, the opinion stressed that

"[t]here is insufficient information available ... to be able to insure that the proposed activity will not jeopardize the continued existence of the monk seal [because] the predator-prey relationship of monk seals and spiny lobster is poorly understood and there is essentially no information available on the importance of the spiny lobster in the monk seal diet." *Id.* at 129–30. The opinion ultimately recommended implementation of the FMP, but warned that the recommendation did not relieve the Council of its obligation under Section 7(a)(2), and that the biological opinion "should not be construed as a 'no jeopardy' opinion." *Id.* at 131. Following the recommendation of the opinion, NMFS implemented the FMP.

NMFS issued another biological opinion in 1996 in connection with Amendment 9 to the FMP, which proposed implementation of a new harvest guideline system.[8] The 1996 opinion noted a continuing decline in pup production and total seal counts at FFS over the past six years. *See* A.R. Vol. XV, No. 862, at 6. The availability of prey such as lobster due to competition from the Fishery was identified as a factor contributing to the decline. *See id.* at 6, 9. NMFS reasoned, however, that the impact of the new harvest guidelines on the lobster stocks should not prevent its implementation: "[G]iven the relatively healthy status of the stocks of lobsters and the small contribution of French Frigate Shoals to the fishery, it is expected that catch competition with monk seals at French Frigate Shoals would not likely occur." *Id.* at 12. NMFS expected the Fishery to expend "little or no effort" at FFS. *See id.* at 9. It concluded that the FMP as amended was not likely to jeopardize the monk seal population at FFS. *See id.* at 11.

In 1999, NMFS reinitiated consultation based on new information regarding lobster fishing in the NWHI, trends in monk

---

8. Among other changes in the harvest guidelines, Amendment 9 permitted undersized and berried lobsters to be retained as part of the harvest.

seal girth, and new studies on the monk seal's diet. NMFS concluded that the proposed 1999 harvest guideline, including establishment of area-specific harvest quotas, was not likely to adversely affect monk seals. *See* A.R. Vol. 16, No. 947, at 1.

As discussed, the reinitiation of consultation does not moot the Section 7 claim. The Court therefore assesses the likelihood that Plaintiffs will prevail on their Section 7 claim. Plaintiffs must show "as an irreducible minimum that there is a fair chance of success on the merits." *San Antonio Community Hosp. v. Southern Cal. Dist. Council of Carpenters,* 125 F.3d 1230, 1234 (9th Cir.1997) (quoting *Stanley v. University of S.Cal.,* 13 F.3d 1313, 1319 (9th Cir.1994)) (internal quotation marks omitted). However, "[i]t is not the function of a preliminary injunction to decide the case on the merits. . . ." *B.W. Photo Utils. v. Republic Molding Corp.,* 280 F.2d 806, 807 (9th Cir.1960) (quoting *Burton v. Matanuska Valley Lines, Inc.,* 244 F.2d 647, 650 (9th Cir.1957) (Lemmon, J., dissenting)) (internal quotation marks omitted).

Plaintiffs attack NMFS's Section 7 compliance on two grounds. First, they contend that NMFS's past consultation efforts were inadequate in that NMFS ignored the best available scientific data, did not obtain additional data necessary to determine the impact of the FMP on monk seals, and did not determine whether the Fishery was likely to destroy or adversely modify the monk seals' designated critical habitat. Second, Plaintiffs argue that scientific evidence recently made available requires the reinitiation of formal consultation.

Plaintiffs' arguments find support in the record. The record documents NMFS's steadfast resistance to reevaluating the Fishery's impact on the monk seal, even in the face of recommendations from other federal agencies that it undertake such reevaluation. NMFS's exchange with the Marine Mammal Commission's ("Commission") is illustrative. In 1991, the Commission recommended formally[9] that NMFS close the Fishery until the lobster stocks returned to optimal levels in order "to better protect lobster stocks in important seal foraging areas" A.R. Vol. XIV, No. 787, at 3; *see also* A.R. Vol. XXXVIII, No.1961, at 7. NMFS responded that "there are little data available that directly address the importance of lobster in the monk seal diet and the potential impact of the lobster fishery on monk seal recovery[,]" and that "the lobster fishery . . . is only a small component affecting the availability of lobster to the monk seal." Pl.'s Mot.Prelim.Inj.Exh "28" at 7–8. The Fishery remained open.

In 1993, a report on the monk seal's status prepared by NMFS noted that the number of monk seals had declined since 1990. *See* A.R. Vol. XXXII, No. 1564, at 21. The report explored several hypotheses explaining this trend, but opined that the only one considered somewhat viable was a decrease in prey availability. *See id.* at 25. The report acknowledged that "[t]he type and relative importance of monk seal prey are still largely unknown." *Id.* However, the hypothesis was "consistent with all of the observed changes in reproduction, survival, and condition of surviving immature [monk seals]." *Id.* The report observed that "[a]t the same time, the available prey may have been reduced by fisheries." *Id.* at 26. Data underlying this observation included an 80 percent decline in catch-per-unit effort for the lobster fishery from 1982 to 1990, low landings (in weight), and large numbers of catches at Necker Island and Gardner Pinnacles, which are important feeding areas for monk seals from FFS. *See id.* Despite these findings, NMFS was unreceptive to

---

9. The Marine Mammals Protection Act requires the Commission to make recommendations to NMFS regarding measures needed to conserve marine mammals. *See* 16 U.S.C. § 1402(a)(4). NMFS must respond within 120 days, and if it declines to follow any recommendation it must explain its reasons in detail. *See* 16 U.S.C. § 1402(d).

the Commission's recommendation in 1994 that NMFS close the Fishery. *See* A.R. Vol. XI, No. 533, at 9. NMFS responded to the Commission that it would not close the Fishery, citing as a reason the limited knowledge on the role of lobster in the diet of the monk seal. *See* A.R. Vol. XIV, No. 824, at 2.

In 1996, prior to the issuance of NMFS's 1996 biological opinion, the Commission reviewed Amendment 9 to the FMP. In response to NMFS's statement that the amended harvest guidelines are "not expected to affect the status of Hawaiian monk seals[,]" the Commission stated:

This expectation appears to be based largely on conjecture and the Commission strongly disagrees that the fishery as proposed provides adequate safeguards to assure that it will not jeopardize monk seals. The best available information clearly indicates that monk seals at French Frigate Shoals are food-stressed and that lack of food is causing the death of newly weaned pups.

A.R. Vol. XXXVIII, No.2014, at 6. After consultation, NMFS nonetheless adopted Amendment 9 and reopened the Fishery. In December 1996, the Commission reiterated its concern and asked NMFS to specify immediately how it intended to determine whether the Fishery was contributing to the decline of the FFS monk seal colony. *See* A.R. Vol. XXXIX, No.2024, at 1–2. Nine months later, NMFS responded with a letter repeating its conclusion that the FMP would not adversely affect monk seals. *See* A.R. Vol. XXXIX, No.2035, at 1.

Meanwhile, new data on the monk seals' diet became available. In 1998, the first preliminary results from fatty acid signature studies indicated that "lobsters are probably more important in the diet that [sic] has been indicated by scat studies and the crittercams." Pl.'s Mot. Prelim. Inj. Exh. "42" at 4. Another pair of researchers working with NMFS scientists used satellite-linked time-depth recorders to determine the location, depth, and duration of

foraging by monk seals in the FFS colony. *See* A.R. Vol. XXII, No. 1295, at 50. They found that most of the seals left FFS to forage at nearby locations that were heavily fished by the Fishery. *See id.* at 27–28. A third study in 1998 found that lobster contained the most total amino acids of all monk seal prey, and that "lack of any particular amino acid can cause poor growth, abnormal function and disease." A.R. Vol. XXIV, No. 1344, at 141. In 1998 and 1999, fatty acid signature studies conducted by researcher Dr. Sara Iverson revealed that lobster comprised 20 to 25 percent of the diet of seal pups and adult females. *See* Pl.'s Mot. Prelim. Inj. Exh. "54" at 3.

The record also indicates that the lobster stocks are in decline. The Hawaiian Monk Seal Recovery Team ("Recovery Team"), a panel consisting of NMFS, Fish and Wildlife Service, and private sector scientists appointed by NMFS reported that the NWHI fishing vessels landed 235,-749 slipper and spiny lobsters in 1999 as compared to a peak catch of 434,200 in 1992. *See id.* at 3. NMFS's Honolulu Laboratory recently reported and estimated that in 1999, there was a 20–30% decline in the exploitable population size of lobsters archipelago-wide and a persistent long-term decline in Necker Island, which holds the last substantial stock of spiny lobster in the NWHI. *See* Pl.'s Mot. Prelim. Inj. Exh. "25" at 1. Based on this report, the Joint Crustacean Plan Team and Advisory Panel of the Western Pacific Regional Fishery Management Council ("Council") recommended a moratorium on lobster fishing beginning in 2000. *See id.* at 2. In February 2000, the Science Director of NMFS's Southwest Fisheries Science Center also recommended closure of the Fishery in the NWHI for the 2000 season, citing the "lack of appreciable [lobster] population rebuilding" in the NWHI and "a 80% drop in mature [catch-per-unit-effort]" between 1988 and 1999. A.R. Vol. XVI, No. 961, at 6, 7. NMFS itself current-

ly proposes to close the Fishery for the 2000 fishing season.

Although the Court need not decide the merits of Plaintiffs' Section 7 claim at this juncture, the record demonstrates a reasonable likelihood that Plaintiffs will prevail on the claim. The central inquiry is whether NMFS has satisfied its obligation under Section 7(a)(2) to insure that the implementation of the FMP does not jeopardize the continued existence of the monk seal or result in the destruction or adverse modification of its habitat. *See* 16 U.S.C. § 1536(a)(2). Based on the scientific data available, it is fair to conclude that NMFS cannot insure that continued implementation of the FMP, which would permit lobster fishing in the monk seal's designated critical habitat, is compatible with the recovery of the monk seal. The newly available data reinforce this conclusion, and arguably necessitate reinitiation of formal consultation to examine "effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered...." 50 C.F.R. § 402.16(b).

### 2. *Section 9 of the ESA*

Section 9(a)(1)(B) makes it unlawful for any person to take any endangered species of wildlife within the United States or the territorial seas of the United States. *See* 16 U.S.C. § 1538(a)(1)(B). "Take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). In turn, the term "harm" includes "significant habitat modification or degradation which actually kills or injures fish or wildlife by significantly impairing essential behavioral patterns, including breeding, spawning, rearing, migrating, feeding or sheltering." 50 C.F.R. § 222.102.

Plaintiffs claim that NMFS's authorization of lobster fishing in the NWHI "kills" and "harms" monk seals within the meaning of Section 9. As discussed above, the data indicate an alarming decline in both the lobster population in the NWHI and the monk seal colony at FFS. Recent evidence also shows that lobster plays an important role in the monk seal's diet. Thus, the data strongly suggest that the Fishery contributes to the starvation of monk seals.

This case is analogous to *Palila v. Hawaii Department of Land & Natural Resources*, 471 F.Supp. 985 (D.Haw.1979), *aff'd*, 639 F.2d 495 (9th Cir.1981). In *Palila*, the plaintiffs brought a citizen suit under the ESA alleging that the State of Hawaii's maintenance of feral sheep and feral goats for sport hunting within the Palila's critical habitat constituted a "taking" of the Palila. The sheep and goats foraged on the mamane-naio forest, upon which the Palila depends for food, shelter, and nesting. This Court held that the foraging "harmed" the Palila and therefore constituted an unlawful "taking."

Removal of lobsters from the monk seal's critical habitat works a similar result. Plaintiffs have come forward with compelling evidence to suggest that continued lobster fishing in the NWHI will lead to "significant habitat modification or degradation which actually kills or injures" monk seals. As such, Plaintiffs demonstrate that they are likely to prevail on the merits of their Section 9 claim.

### 3. *NEPA Claim*

NEPA requires all federal agencies to prepare an EIS for "major Federal actions significantly affecting the quality of the human environment...." 42 U.S.C. § 4332(C). NMFS's management of the Fishery pursuant to the FMP qualifies as a major federal action. An agency is required to supplement an EIS whenever there are "significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9(c)(1)(ii).

NMFS prepared an EIS when the original FMP was drafted in 1983. The crux of

Plaintiffs' NEPA claim is that NMFS has not supplemented that EIS in light of changed conditions, including studies concerning the monk seals' critical habitat and the role that lobster plays in the monk seal diet, and the decline in monk seal and lobster populations.

NMFS has already begun preparing a new EIS in connection with the FMP. Plaintiffs' NEPA claim is therefore moot to the extent it seeks a court order compelling NMFS to prepare a new EIS. However, the claim remains justiciable to the extent it seeks injunctive relief pending completion of the new EIS. That portion of the claim is likely to succeed on the merits. Irreparable damage is presumed when an agency fails to evaluate thoroughly the environmental impact of a proposed action. *See Friends of the Earth, Inc. v. Coleman*, 518 F.2d 323, 330 (9th Cir.1975). "Indeed, the policies underlying NEPA 'weight the scales in favor of those seeking the suspension of all action until the Act's requirements are met....' " *Save Our Ecosystems v. Clark*, 747 F.2d 1240, 1250 (9th Cir.1984) (quoting *Alpine Lakes Protection Soc'y v. Schlapfer*, 518 F.2d 1089, 1090 (9th Cir.1975)). NMFS concedes that its compliance with NEPA has been wanting. A preliminary injunction would issue on the basis of Plaintiffs' NEPA claim but for the considerations discussed below.

## C. LIKELIHOOD OF HARM

Having determined Plaintiffs' probability of success on the merits of their ESA and NEPA claims, the Court now considers whether other factors militate in favor of issuing a preliminary injunction.

The conventional test for granting a preliminary injunction requires the moving party to demonstrate: "(1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation, and [that] the balance of hardships tips sharply in favor of the party seeking relief." *Marbled Murrelet v. Babbitt*, 83 F.3d 1068, 1073 (9th Cir.1996) (citing *Sierra Club v. Marsh*, 816 F.2d 1376, 1382 (9th Cir.1987)). However, Congress has determined that in ESA cases, "the balance of hardships and the public interest tip heavily in favor of endangered species." *Marsh*, 816 F.2d at 1383 (citations omitted). The Court's discretion in weighing the balance of hardships is therefore limited in ESA cases. Nevertheless, "[f]ederal courts are not obligated to grant an injunction for every violation of the law." *National Wildlife Fed'n v. Burlington Northern R.R., Inc.*, 23 F.3d 1508, 1511 (9th Cir.1994) (citing *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 193, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978)). A court may "look at the likelihood of future harm before deciding whether to grant an injunction under the ESA." *Id.*

The impetus of Plaintiffs' motion for a preliminary injunction is their concern that continued implementation of the FMP in violation of ESA and NEPA requirements will harm the monk seal. Given the probability that violations of the ESA and NEPA have occurred, the concern is a real one if not for NMFS's proposals to bring itself into compliance with the law. Consultation under Section 7 has reinitiated. Meanwhile, NMFS plans to suspend the 2000 lobster fishing season. This course of action diminishes the likelihood of harm in the immediate future. It is conceivable that during the period that implementation of the FMP is suspended, formal consultation will be complete and a new biological opinion on the FMP will issue. The conclusions drawn in the new opinion might make it unnecessary for the Court to intervene in closing the Fishery beyond the 2000 season. Issuing a preliminary injunction on the basis of the ESA claims is inappropriate under these circumstances.

A preliminary injunction should not issue on the basis of the NEPA claim for similar reasons. Although irreparable injury is presumed when an agency proceeds with a proposed action without assessing the impact on the environment of the ac-

tion, there is no immediate danger that NMFS will implement the FMP without undergoing the evaluation process set forth in NEPA. Indeed, NMFS has already begun preparing a new EIS that will evaluate the impact of the FMP on the monk seal. It is therefore unlikely that irreparable harm will befall the monk seal if this Court denied injunctive relief at this juncture. Plaintiffs' motion for a preliminary injunction is accordingly DENIED WITHOUT PREJUDICE.

Of course, Plaintiffs are not without a remedy. They may continue to seek permanent injunctive relief. The Court is also mindful that Defendants' assurances of compliance provide comparatively less comfort than the unequivocal command of an injunction. For that reason, Defendants are ordered to serve notice to Plaintiffs, the Association, and the Court if it intends to take action different from what it has proposed to the Court, and to seek leave from the Court before proceeding with the new action. Such action would include rescission of NMFS's decision to close the 2000 fishing season or definitive plans to implement an experimental fishing program. Plaintiffs may renew their motion for a preliminary injunction in the event Defendants propose to alter their current course of action.

### CONCLUSION

For the foregoing reasons, (1) Plaintiffs' motion to strike portions of the declaration of Charles Karnella is DENIED; (2) the Association's motion to intervene is GRANTED; and (3) Plaintiffs' motion for a preliminary injunction is DENIED WITHOUT PREJUDICE. Further, Defendants are ORDERED to notify Plaintiffs, the Association, and the Court of any intent to deviate from the course of action they have proposed to the Court, and to

seek leave from the Court prior to implementing such new action.

IT IS SO ORDERED.